# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2009

Charles R. Fulbruge III
Clerk

No. 08-41082
Summary Calendar

DOROTHY N. OLLIE

Plaintiff - Appellant

v.

PLANO INDEPENDENT SCHOOL DISTRICT

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:06-CV-69

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Dorothy Ollie, appearing *pro se*, appeals the dismissal with prejudice of her claims against Defendant-Appellee Plano Independent School District ("PISD") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the district court's summary judgment that she take nothing on her claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* We affirm in part, vacate in part, and remand

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

08-41082

for further proceedings.

I.

Ollie, who was a fifth grade teacher for PISD, asserted claims of racial discrimination, hostile work environment, and retaliation under Title VII; violation of her civil rights under 42 U.S.C. § 1983; age discrimination under the ADEA; and intentional infliction of emotional distress and breach of contract under state law. The district court dismissed all but Ollie's Title VII and ADEA claims,[1] which were then mediated. This mediation produced a hastily drafted, hand-written settlement agreement signed by all parties and their attorneys.[2] Under the terms of this agreement, Ollie agreed to settle "all claims" in exchange for twenty months paid administrative leave. Ollie subsequently refused to sign a more formal agreement, and PISD filed a motion to enforce the hand-written settlement and dismiss Ollie's remaining claims with prejudice. After briefing and a hearing on the matter, the district court granted the motion as to Ollie's Title VII claim but denied it as to her ADEA claim, holding that the agreement lacked certain language required by 29 U.S.C. § 626(f)(1)(B) and (C). The district court later issued an order clarifying that the agreement superceded Ollie's teaching contract with PISD. Finally, the district court granted PISD's motion for summary judgment on the ADEA claim. Ollie timely appealed.

II.

Although Ollie's *pro se* brief is deficient in many ways, we are able to identify the following claims therein: that the district court erred in (1)

---

[1] As we understand her *pro se* brief, Ollie does not appeal the dismissal of her § 1983 and state law claims.

[2] Although she brings this appeal *pro se*, Ollie was initially represented by counsel.

08-41082

enforcing the settlement agreement as written; (2) holding that the settlement agreement superceded her teaching contract; and (3) granting summary judgment on her ADEA claim.

"[P]ublic policy favors voluntary settlement of employment discrimination claims brought under Title VII." *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986). "Nonetheless, we must closely scrutinize a release waiving rights under Title VII because of their remedial nature." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). The interpretation and validity of a release of claims under Title VII is governed by federal law, and such a release is valid only if it is knowing and voluntary. *Id.* This court has adopted a "totality of the circumstances" test in determining whether a release is knowing and voluntary. *Id.*; *see also O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990). Once the employer has established that the employee "signed a release that addresses the claims at issue, received adequate consideration, and breached the release . . . [i]t is then incumbent upon the former employee to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense." *Amedisys Inc.*, 298 F.3d at 441 (quotations omitted). The following factors are relevant in determining whether the employee has established a defense to the validity of the release:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (quoting *O'Hare*, 898 F.2d at 1017). We review the district court's factual

3

08-41082

findings following a hearing on this issue for clear error, *see Lee v. Hunt*, 631 F.2d 1171, 1177 (5th Cir. 1980), and we review the interpretation of the agreement de novo, *Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 685 (5th Cir. 2008).

Ollie first contends that when she signed the settlement agreement, it did not contain the paragraph settling her claims in exchange for twenty months' paid leave. This contention was contradicted by several witnesses, including her own attorney, and the district court did not clearly err in rejecting it.

Ollie also contends that the parties' true agreement was to give Ollie enough paid administrative leave to allow her to retire with full benefits, and that the twenty month figure was an estimate to be revisited (and was later determined to be insufficient). The district court rejected this argument, stating that "[i]f Ms. Ollie miscalculated the number of points that she needed to reach her full retirement, then that was a unilateral mistake on her part and she is still bound by the settlement agreement that she signed." If PISD had agreed to twenty months' leave without intending or believing that it would allow Ollie to retire with full benefits, then we would agree that Ollie's mistake was unilateral. However, in ruling that the settlement agreement was intended to "override and replace" Ollie's existing teaching contract, the district court specifically found that "the intent of the parties was for the 20 month time frame to enable Ollie to draw full retirement benefits." Since both parties intended that the leave allow Ollie to retire with full benefits, the mistake as to whether twenty months was sufficient for this purpose was mutual, not unilateral. *See* Restatement (Second) of Contracts, § 152 (1) (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances,

4

Case 4:06-cv-00069-RAS   Document 91-2   Filed 05/26/09   Page 5 of 7 PageID #: 1593

08-41082

the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154."); *compare id.* at § 153 cmt. c, illus. 5 ("A writes B offering to sell for $ 100,000 a tract of land that A owns known as '201 Lincoln Street.' B, who mistakenly believes that this description includes an additional tract of land worth $30,000, accepts A's offer. If [and only if] the court determines that enforcement of the contract would be unconscionable, it is voidable by B."), *with id.* at § 151 cmt. b, illus. 3 ("A contracts to sell a tract of land to B. Both parties understand that B plans to erect an office building on the land and believe that he can lawfully do so. Unknown to them, two days earlier a municipal ordinance was enacted requiring a permit for lawful erection of such a building. There is a mistake of both A and B."). Nor does the fact that it was Ollie who provided the twenty month figure necessarily preclude relief. *See id.* at § 157 ("A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.").

Because the district court erred, as a matter of law, in characterizing the mistake in this case as unilateral, it did not make the necessary findings to determine whether, under the totality of the circumstances, Ollie has established the defense of mutual mistake. *See id.* at § 152 (mistake must be a "basic assumption on which the contract was made" and have a "material effect on the agreed exchange of performances"); *see also id.* at § 154 ("When a Party Bears the Risk of a Mistake"). We do not conclude today that she has. Rather, we vacate the dismissal of Ollie's Title VII claim and remand to the district court to allow it to make those findings in the first instance. Because the district court must consider on remand whether the settlement agreement is valid, we do not

08-41082

reach the question of whether that agreement supercedes Ollie's employment contract.

### III.

Ollie also contends that the district court erred in granting PISD's motion for summary judgment on her ADEA claim. This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007). "Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir. 2005). Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff can demonstrate age discrimination in two ways, either through[] direct evidence or by an indirect or [circumstantial] method of proof." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (quotation omitted). A plaintiff who relies on circumstantial evidence "must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the defendant meets this burden, the "presumption of discrimination created by the plaintiff's prima facie case" is eliminated, and "the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (footnote omitted). The "plaintiff

08-41082

may meet this burden by producing evidence tending to show that the reason offered by the defendant is pretext for discrimination." *Id.* Further, under 29 U.S.C. § 626(d), "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed" with the Equal Employment Opportunity Commission ("EEOC"). "And § 626(d) establishes time limits for filing the EEOC charge. For cases arising in Texas, a complainant must file within 300 days of the last act of discrimination." *Julian v. City of Houston*, 314 F.3d 721, 725–26 (5th Cir. 2002) (citing 29 U.S.C. § 626(d)(2)).

Here, Ollie filed a charge with the EEOC on January 20, 2005. Most of the alleged discriminatory conduct occurred more than 300 days prior to this filing and therefore cannot support Ollie's claim. In any case, we agree with the district court that, assuming *arguendo* that Ollie has put forth a prima facie case, she has not produced evidence raising a question of fact as to whether PISD's legitimate, non-discriminatory reason for the purported employment decision[3]—complaints about Ollie's professionalism from faculty and parents—was, in fact, a pretext. *Evans v. Houston*, 246 F.3d 344, 350 (5th Cir. 2001). We therefore affirm the district court's grant of summary judgment on Ollie's ADEA claim.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings not inconsistent with this opinion.

---

[3] PISD argues that Ollie has not suffered an adverse employment action for the purposes of an ADEA claim. Because we affirm the district court's grant of summary judgment on other grounds, we do not reach this issue.

7

A true copy
Attest:
Clerk, U.S. Court of Appeals, Fifth Circuit
Deputy 5/14/09
New Orleans, Louisiana